**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Leon Cordell HORTON and Artis O'Dell Reed, Defendants-Appellants.**

No. 82–4208.

United States Court of Appeals,
Fifth Circuit.

May 16, 1983.

Thomas E. Royals, court-appointed, Jackson, Miss., for Horton.

W.S. Moore, court-appointed, Jackson, Miss., for Reed.

James B. Tucker, Asst. U.S. Atty., Jackson, Miss., for U.S.

Before GEE, REAVLEY and HIGGINBOTHAM, Circuit Judges.

GEE, Circuit Judge:

Horton and Reed, convicted by a jury at a joint trial of conspiracy to obstruct commerce by means of extortion in violation of the Hobbs Act,[1] appeal. As we shall see, the evidence established that the two conspired and attempted to extort money from a number of large domestic corporations by poisoning their products and threatening to kill their officers and employees. Appel-

lants' primary complaint to us is that their rights to speedy trial were breached. Other contentions are made as well and will be noticed. We reject them all and affirm both convictions.

*Speedy Trial*

Horton and Reed were indicted on May 20, 1981.[2] Reed was arrested in Dallas and returned to Mississippi on May 26. According to the Magistrate's report, the first appearance by either before a judicial officer of the Southern District of Mississippi, where the charges were pending, was that of Reed, on May 27, 1981. Since Horton was not arrested until May 29, in Texas, his first appearance was necessarily later. The earliest date, therefore, on which the Speedy Trial Act's seventy-day period could have begun to run was May 27.[3] Trial did not commence until March 1, 1982, a delay of almost 280 days.

The Act requires exclusion of certain periods of pendency from this calculation, however, among which are these:

(h) The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence:

(1) Any period of delay resulting from other proceedings concerning the defendant, including but not limited to—

.        .        .        .        .

(F) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion;

.        .        .        .        .

(J) delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding con-

---

1. 18 U.S.C. § 1951.

2. We are at a loss to explain Appellants' claim on brief that they were arraigned on May 1, nineteen days before indictment, which finds no support in the record.

3. "[T]he trial of a defendant ... shall commence within seventy days from the filing date ... of the indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1).

cerning the defendant is actually under advisement by the court.

. . . . .

(7) A reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted.

18 U.S.C. § 3161(h). Reed filed his first motion on June 18, 1981, Horton on June 22. There followed various settings of the motions for hearing, but they were not heard until December 22, 1981, and were not all disposed of until over thirty days thereafter. Obviously, if even the shorter period of motion-pendency, Horton's of 183 days, plus thirty additional days for the "under advisement" exception—a total of 213 days— be deducted from the case's pendency, the critical seventy-day period of the Act was not exceeded. Reed's situation is *a fortiori*.[4]

■ Appellants attack the exclusion of the motion-pendency period as unjustified, asserting that little or none of it was occasioned at their request or on their account. Even assuming this to be so, we still must conclude that the attack fails. The terms of exclusion F, quoted above, are all but absolute. They exclude "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing . . . ." It is true that there follows a reference to "other prompt disposition" of the motion, one that might be taken to imply that such matters should be promptly disposed of and that might justify, in an egregious case, disregarding some portion of the pendency period. Such a case might be presented by repeated unsuccessful requests for hearings or by other credible indication that a hearing had been deliberately refused with intent to evade the sanc-

tions of the Act. Nothing of the sort is evident here.

■ The motions were promptly set on July 2, 1981. Because of his occupation with a civil trial on that date, the magistrate rescheduled them for July 30. Unfortunately, he was ill on that date. A later motion was filed by Horton on August 27, seeking the suppression of certain evidence. The record reveals no further attempt by defense counsel to obtain a hearing until November 13, when Reed moved for a setting of all pretrial motions. This was promptly scheduled for December 3 but was re-noticed by counsel for December 22, when all motions were heard. Thus, the longest period of inaction was from July 30 to November 13, three and a half months during which, by the record, counsel sought no hearing. When he did, one was promptly set. We do not regard these periods of pendency with approbation, nor will we countenance trifling with the Act. Nevertheless, the situation and sequences presented do not approach that degree of egregiousness which might, in the circumstances noted above, justify our disregarding the clear language of the exclusion. As Congress doubtless recognized in enacting exclusion F, today's motion practice in criminal cases can be, and often is, both complex and dispositive. That exclusion places no rigid time strictures on the practice whatever, and only the shadow of an implied one. Fidelity to its enactment requires rejection of appellants' contention.[5]

### Other Contentions

■ Appellants next complain of the denial of a motion by Reed for severance and separate trial. The law governing such motions is epitomized in *United States v.*

---

**4.** In addition, Appellant Reed requested and was granted the addition of seven days to the Act's seventy-day period.

**5.** Appellants contend in passing that their Sixth Amendment rights were also violated. The claim is not seriously pressed, and in response to it we need only observe that the Speedy Trial Act was itself intended by Congress to give effect to this constitutional right. See

*United States v. MacDonald*, 456 U.S. 1, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982). As the Congressional view of what suffices to satisfy the Constitution, the Act is entitled to much deference; and while it is perhaps conceivable that an occasional extreme case may arise in which the Act is satisfied but not the Constitution, this is not such a case.

*Swanson,* 572 F.2d 523 (5th Cir.), *cert. denied,* 439 U.S. 849, 99 S.Ct. 152, 58 L.Ed.2d 152 (1978): that they are addressed to the discretion of the court, which will not be disturbed absent an affirmative showing of its abuse; that considerations of judicial economy and the policy favoring joint trials in conspiracy cases weigh against them; that defenses must be irreconcilable, rather than merely antagonistic, for severance upon such a ground; and that only a showing of compelling prejudice, against which the trial court cannot protect, so that a fair trial cannot be had, will prompt reversal of that court's order.

It is not too much to say that, on this record, appellants have shown little if any prejudice whatever. Their brief cites unfavorable pretrial publicity, but to our reading the two newspaper accounts admitted in evidence are balanced, even skeptical, as to the government's case. Their defenses were not antagonistic, let alone irreconcilable, consisting of denials of involvement and attacks on the government's evidence and on the credibility of its witnesses. The trial court carefully instructed the jury that the evidence as to each defendant should be considered separately and that neither should be tarred by mere association with the other. Denial of the motion was not error.

█ Horton next claims that the evidence connecting him to the despicable and cowardly series of outrages revealed by the record is insufficient to support his conviction. We reject the claim as frivolous.

Horton concedes, as he must, that the evidence established the existence of a conspiracy, of which his codefendant Reed was a member, to extort money from numerous corporate victims. Pursuant to it, hundreds of threatening letters signed "B.A. Fox," typed on one and the same typewriter, were sent to innocent persons around the country, along with dozens of letter bombs. These latter, one of which exploded causing serious injury, were mailed in envelopes addressed on the typewriter referred to above. Other such letters threatened assassination by snipers; some contained ticks, accompanied by "B.A. Fox" letters asserting that they carried deadly diseases. Products contaminated with rat poison were introduced to retail store shelves and purchased by customers, along with more whimsical items such as eye drops containing pepper juice and shampoo laced with depilatory. Horton's sole contention is that the record evidence is inadequate to support the conclusion of the jury that he was a participant in these odious doings.

To the contrary, only a portion of the record evidence need be recited to demonstrate its sufficiency to connect Horton to the scheme. One witness, the former wife of Horton's codefendant Reed, testified that at the relevant times she observed the two closeted in Horton's bedroom, typing. Both were wearing rubber gloves. Letters were strewn about the room. One which she read demanded a large sum of money and was signed "B.A. Fox." She observed Horton collecting ticks and heard a discussion between him and Reed about how long such an insect could survive in an envelope. She observed the defendants entering retail stores carrying paper bags, returning empty-handed. She accompanied Horton and Reed on a trip to Oklahoma City, where the three entered retail stores on ten or twelve occasions, introducing various items such as eye drops, shampoo and powder to their shelves. On the return trip, Horton expressed amusement at customers' finding pepper juice in eye drops or hair remover in shampoo. Much other evidence, some circumstantial, indicated Horton's involvement. The evidence of it was adequate.

█ Appellants' final point, complaining of an isolated passage in the court's jury charge, is likewise frivolous and does not merit discussion.[6]

---

**6.** The court charged that if "it does appear beyond a reasonable doubt from the evidence in the case that a conspiracy did exist as charged and that the defendant with [was] one of its members ...." The complaint is that "beyond a reasonable doubt" was not repeated after the conjunction "and."

We are not moralists but jurists, and we have acted as such in reviewing these convictions. Appointed counsel have labored manfully in the cause of these appellants; we commend their efforts. Even so, we cannot close without observing that the twenty-year sentences meted out to appellants for these callous acts directed against unknown and innocent third persons, perhaps children, seem richly deserved. There being no one else to say so, we take the occasion.[7]

AFFIRMED.

---

**7.** Although the trial judge did observe orally, at sentencing, that the evidence depicted crimes "bizarre, demented, perverted and heinous," in which the appellants "teamed up to reap [wreak] torment and possibly even death upon unsuspecting victims . . . ."