**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Charles H. SCHMIDT,**
**Defendant-Appellant.**

No. 83–1090.

United States Court of Appeals,
Fifth Circuit.

July 22, 1983.

Rehearing and Rehearing En Banc
Denied Sept. 9, 1983.

Underwood, Wilson, Berry, Stein & Johnson, A.W. Sorelle, III, Harlow Sprouse, Amarillo, Tex., Dougald D. McMillan, Dallas, Tex., for defendant-appellant.

John J. Powers, III, Dept. of Justice, Antitrust Div., Margaret G. Halpern, Washington, D.C., for plaintiff-appellee.

Before GARZA, POLITZ and TATE, Circuit Judges.

GARZA, Circuit Judge:

Defendant-appellant, Charles Schmidt, appeals from his conviction after a jury trial on one count of making false statements before a grand jury in violation of 18 U.S.C. § 1623. Schmidt raises numerous grounds for error including challenges to the indictment, to the grand jury selection and to the lower court's refusal to admit expert testimony. He also raises a speedy trial claim. Finding no reversible error, we affirm.

Charles Schmidt is part owner of a highway paving construction firm located in Amarillo, Texas. As part of a series of investigations by the Department of Justice into illegal "bidrigging" for government contracts, Schmidt was called to testify before a federal grand jury sitting in Austin, Texas on January 22, 1981. He began testifying at 11:15 a.m. and was dismissed late in the day at the end of proceedings for that day. During his examination, Schmidt was asked questions generally about his work and his method for calculating bids for government contracts. He was then asked about several specific projects and asked to explain various "coincidences" in

bidding which government attorneys suggested were reflected by comparison of bids submitted and projects awarded when certain combinations of firms were involved in submitting bids. Finally, Schmidt was asked to answer a series of questions all of which sought to determine if Schmidt knew of or had ever been involved in illegal bidrigging. Schmidt exercised no fifth amendment privilege, but rather chose to answer each of the questions in the negative. Other than lunch recess and several breaks, Schmidt never requested permission nor took the opportunity to speak with his retained counsel who was present outside the grand jury room. Based on his answers to this last series of questions, Schmidt was indicted and subsequently convicted for false swearing.

### Sufficiency of the Indictment and Evidence

Schmidt first raises several challenges to the indictment itself. He contends that the indictment was deficient because it failed to allege an offense or advise him of the charges being made. His contention rests upon the language in two paragraphs (¶¶ 5 and 6) of Count 1 of the indictment under which Schmidt was brought to trial.

Paragraph 5 sets forth the supposedly false statements he made before the grand jury:

Q. Has any contractor or representative of a contracting firm ever asked you or someone else from your company to submit a cover or complementary bid as you have defined it?

A. Not—not that I remember. Not that I remember.

Q. Has any other general contractor or representative of another general contractor asked you or another member of the company if they could have a particular job?

A. No.

Q. Has any contractor or employee of a contracting firm ever given you or a representative or your company a dollar figure or markup figure and asked you to submit a bid higher than that figure?

A. Not that I know of.

Q. Have you or anyone else in your company ever offered to—or been requested to exchange a cover bid or a complementary bid or promised not to bid on a particular project?

A. No.

Paragraph 6 explains why these statements are false stating that Schmidt's declarations "were untrue and false in that he was aware that he had agreed with at least one other Texas highway contractor to refrain from bidding competitively on a Texas highway project and agreed to turn in a complementary bid on the project on behalf of the other contractor."

Schmidt asserts that the "truth" allegations in paragraph 6, which refer to whether he was "aware of" or had "agreed to" make complementary bids, do not directly contradict or put into issue the alleged false statements in paragraph 5, which refer to whether he "or anyone else in his company" had been "asked," "requested," or "promised" to make these bids. We disagree.

■ Looking at the indictment as a whole and heeding "practical, not technical considerations," *United States v. Markham,* 537 F.2d 187, 192 (5th Cir.1976), *cert. denied,* 429 U.S. 1041, 97 S.Ct. 739, 50 L.Ed.2d 752 (1977), this indictment is sufficient because it contains the elements of the offense charged and fairly informs the defendant of the charge against him. *Hamling v. United States,* 418 U.S. 87, 117–18, 94 S.Ct. 2887, 2907–08, 41 L.Ed.2d 590 (1974). Even a cursory reading of the indictment establishes what statements the government alleged to be false and why such was in fact the case. It is obvious that if the facts alleged in paragraph 6 were true, then Schmidt's statements in paragraph 5 were false. If in fact Schmidt "had agreed to" submit a complementary bid as alleged in paragraph 6, then such presupposes that he was in fact "asked" or "requested" to submit the bid which he had denied in paragraph 5.

Furthermore, contrary to Schmidt's assertion, the evidence clearly established the "truth" allegations of paragraph 6. At trial, the government introduced evidence from four contractors indicating that Schmidt had actively participated in bidrigging by submitting complementary bids in a substantial number of cases. Such evidence established that Schmidt materially lied in his grand jury testimony denying both his knowledge and participation in and his recall of bidrigging activities. We must reject, therefore, appellant's challenges to the indictment and sufficiency of evidence.

### Expert Testimony

Schmidt's second contention raises a more serious concern. Appellant challenges the exclusion by the trial court of testimony by a linguistics expert which appellant claims was vital to the presentation of his theory of defense. At trial, Schmidt attempted to establish that whatever falsehoods he may have stated before the grand jury were not knowingly and willfully uttered. The defense sought to establish that after five and one-half hours of otherwise truthful testimony which in part detailed facts about specific transactions, Schmidt's uncertain responses (such as "not that I remember") to various global questions by the government were not intentional and knowing falsehoods, if at all.

For reasons not relevant to our consideration of this issue, Schmidt chose not to testify himself at trial. Instead, the defense sought to introduce the expert testimony of psycholinguistics professor, William Peters, for the purpose of placing into context the alleged falsehoods uttered by Schmidt. In a proffer of testimony outside the jury's presence, Peters explained how certain answers to certain questions, which on their face might appear to be false, could in fact be interpreted otherwise when placed in the total context of a discussion.[1] He also explained that the length of Schmidt's testimony, the stress he was under and the global nature of the questions asked by the government could have affected the manner in which Schmidt interpreted the questions and responded to them.

After careful deliberation, the district court denied appellant's proffer of expert testimony finding that the evidence would "not assist the trier of facts to better understand the evidence or to determine any fact in issue." The court found that the issue presented was not complex and that the jury was more than capable of examining and considering the context in which the defendant had testified. More importantly, the court found that the admission of the proffered testimony would tend only "to confuse the issues and would tend to mislead, rather than assist, the finder of facts." We must determine if the court abused its discretion.

Fed.R.Evid. 702 states that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert ... may testify thereto in the form of an opinion or otherwise." (emphasis added). It is the duty of the trial court, however, to determine whether under the facts of a particular case the proffered testimony will aid the jury in its deliberation. The court has wide discretion to admit or exclude expert testimony and such action will be sustained unless manifestly erroneous. *Salem v. United States,* 370 U.S. 31, 82 S.Ct.

1. Professor Peters gave the following example: "How one interprets questions—a given question can certainly be influenced by what has happened before, yes. . . . [S]uppose that you and I had been talking about a trip that I took last weekend, say to see a football game somewhere. And then, you were to ask me, "Well, what have you been doing lately?" It would be perfectly natural for me to think you were asking about things other than this trip to see the football game and very odd, since the answer would be perfectly obvious for me to interpret the question, lets say literally."

The defense sought to raise the inference that Schmidt, because he had previously discussed in greater detail various transactions with certain contractors, may have inferred from the government's general questions that they sought information about bidrigging among contractors other than those previously discussed before the grand jury.

1119, 8 L.Ed.2d 313 (1962); *Page v. Barko Hydraulics,* 673 F.2d 134, 139 (5th Cir.1982); *United States v. Lopez,* 543 F.2d 1156, 1158 (5th Cir.1976), *cert. denied,* 429 U.S. 1111, 97 S.Ct. 1150, 51 L.Ed.2d 566 (1977); 3 Weinstein's Evidence § 702[02]. Although Rule 702 "somewhat broadens the range of admissibility, it by no means mandates admission of such testimony." *United States v. Lopez, supra.* Expert testimony, like any other testimony, may be excluded if, compared to its probative worth, it would create a substantial danger of undue prejudice or confusion. Fed.R.Evid. 403. In reviewing the lower court's exercise of discretion we are mindful that an appellate court, unlike the court below, "does not have the benefit of the first hand observation of the witnesses and testimony as it unfolds before the jury," *Meineke Discount Muffler Shops, Inc. v. Bleier,* No. 81–2496, (5th Cir. June 23, 1983); accordingly, only in exceptional circumstances will reversible error be found in the district court's determination of the probative value of testimony in a particular case. *Offshore, Inc. v. K.O. Steel Castings, Inc.,* 662 F.2d 1104, 1107 (5th Cir.1981).

▉ We do not believe the district court abused its discretion. The admissibility of the expert testimony in this case was a close question. Professor Peters' testimony, while arguably relevant and admittedly important to defendant's case, was also of a nature which complicated an otherwise simple issue before the jury.[2] The trial judge, who heard the testimony, was in the best position to determine the effect of such testimony on the jury and whether it would tend to assist or confuse the triers of fact in their deliberations. The lower court carefully considered the question, hearing arguments from both parties and granting counsel time to make a substantial proffer of testimony. The court then recessed the trial for a short period to consider further the admissibility of the testimony. It ultimately concluded such testimony would not assist the jury. We find no abuse of discretion in the court's ruling. *See United States v. West,* 670 F.2d 675, 682 (7th Cir.), *cert. denied* 457 U.S. 1139, 102 S.Ct. 2972, 73 L.Ed.2d 1359 (1982) (no error in denying expert testimony as to defendant's ability to understand a bribe); *Chesebrough-Pond's, Inc. v. Faberge, Inc.,* 666 F.2d 393, 397–98 (9th Cir.1982), cert. denied —— U.S. ——, 103 S.Ct. 294, 74 L.Ed.2d 277 (1982) (exclusion of expert testimony as to similarity of words permissible); *United States v. Hearst,* 563 F.2d 1331, 1349–50 (9th Cir. 1977); *cert. denied,* 435 U.S. 1000, 98 S.Ct. 1656, 56 L.Ed.2d 90 (1978) (exclusion of psycholinguistics expert for Rule 403 relevance reasons was not error). Furthermore, even considering the proffered testimony, assuming maximum probative force and minimum prejudice, *see Offshore, Inc. v. K.O. Steel Castings, Inc., supra,* 662 F.2d at 1107–08, the evidence presented was so inculpatory that we do not believe a different result would have been reached had the expert testimony been before the jury.

### Grand Jury Selection

We find little merit to appellant's next claim—that the grand jury which indicted him was not selected in accordance with the Jury Selection and Service Act of 1968, 28 U.S.C. § 1861 *et seq.* and the local plan in the Western District of Texas providing for random selection of grand jurors. In the instant case, the grand jury was selected in equal proportions from two divisions in the western district, the Austin and Waco divisions. The local plan itself provided that when jurors were selected from more than one division, they were to be chosen "on a substantially proportionate basis." Had jurors been chosen from each division on an *exact* proportionate basis, thirty-nine, rather than thirty, would have been chosen from the Austin division. This slight vari-

---

**2.** Professor Peters identified himself as a "cognitive scientist" specializing in "psycholinguistics." Much of his testimony dealt with the manner in which memory was stored in the brain and the ability of one to recall information. After analyzing the grand jury transcript, he sought to point out what questions in his opinion possessed "high-probe value" and which ones did not.

ance, if at all, from the local plan, it is asserted, required the court to dismiss the indictment. We disagree.

 The Jury Selection and Service Act provides for the dismissal of an indictment only when there has been a *substantial* failure to comply with the statutory provisions in selecting the grand or petit jury. 28 U.S.C. § 1867(a). Whether there has been a substantial violation of the Act is determined by weighing the alleged violation against the underlying principles of the Act. *United States v. Bearden,* 659 F.2d 590, 600 (5th Cir.1981), *cert. denied,* 456 U.S. 936, 102 S.Ct. 1993, 72 L.Ed.2d 456 (1982); *United States v. Maskeny,* 609 F.2d 183, 191 (5th Cir.), *cert. denied,* 447 U.S. 921, 100 S.Ct. 3010, 65 L.Ed.2d 1112 (1980); *United States v. Davis,* 546 F.2d 583, 589 (5th Cir.), *cert. denied,* 431 U.S. 906, 97 S.Ct. 1701, 52 L.Ed.2d 391 (1977). This court, citing to legislative history, has recognized that the two fundamental principles of the Act are: (1) random selection of juror names from the voter lists of the district or division in which court is held; and (2) determination of juror disqualifications, excuses, exemptions and exclusions on the basis of objective criteria only. *United States v. Bearden, supra,* 659 F.2d at 600. Mere technical deviations from the Act constitute neither a substantial noncompliance nor frustration of the principles of the Act. *Id.,* 659 F.2d at 601; *United States v. Davis, supra,* 546 F.2d at 589. Violation of a local plan is analyzed in the same manner as the Act; we look to see if any of the Act's policies were frustrated therefrom. *United States v. Bearden, supra,* 659 F.2d at 601.

Appellant does not and cannot cite to any violation of the Act itself which occurred in this case; rather, his sole claim rests upon the asserted violation of the local plan with respect to the proportionate selection of jurors from differing divisions. Assuming arguendo that any noncompliance occurred, such is at best harmless error. There can be no doubt that the random selection of jurors which the Act seeks to enforce was not violated in this case. The local plan itself, at that time, required that jurors be

selected "on a *substantially*. proportionate basis," not an *exact* proportion as Schmidt claims. In fact, the district court found that the selection process used did not even violate the local plan "since a reasonable interpretation of the local plan indicates the acceptability of choosing approximately an equal number of prospective jurors from each division in the random draw." It is somewhat ironic that before Schmidt ever filed his motion to dismiss on March 15, 1982, the local plan had been amended abolishing multi-division grand juries; thus, had his indictment been dismissed, Schmidt could have been reindicted by a grand jury drawn entirely from Waco, the division he presently claims was overrepresented. In this light, it is difficult to perceive how the absence of exact proportional representation between divisions constituted a substantial violation of the Act's policies. It is even more ironic that the grand jury which in fact indicted Schmidt was composed of roughly a 2-to-1 proportion of individuals from Austin and Waco, respectively.

 This court in *Bearden,* held that the Act does not require "statistical randomness" 659 F.2d at 601–02; the clerk's erroneous selection of starting numbers for choosing the jury from a wheel of names, that may have resulted in a nonrandom concentration of jurors from certain segments of the wheel, did not constitute a substantial violation of the policies behind the Act to warrant dismissal of the indictment. The *Bearden* court quoted the legislative history of the Act, that approves "some system of selection that affords no room for impermissible discrimination against individuals or groups." S.Rep. No. 891, 90th Cong., 1st Sess. 16 n. 9 (1967). The clerk's mistake in the present case is analogous to that presented in *Bearden.* We find no substantial error which would have required dismissal of the indictment.

### Speedy Trial Claim

Schmidt next contends that his right to speedy trial was breached by the failure of the district court to promptly dispose of various motions which allegedly were under

consideration thereby delaying his trial beyond the seventy-day limit provided by the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.* Schmidt was indicted on November 20, 1981 and arraigned nineteen days later on December 9, 1981. His trial commenced October 18, 1982. The time elapsing between his indictment and trial date amounted to 322 days; of this amount, Schmidt concedes that 158 days were properly excludable. The critical 128-day period which he challenges as non-excludable occurred between May 10, 1982 and September 15, 1982 during which Schmidt claims the district court failed to promptly dispose of pending motions. We find that such time period was properly excludable and that no speedy trial violation arose.

On March 15, 1982, Schmidt filed a motion to dismiss the indictment on grounds challenging the selection of the grand jury. An extensive brief and numerous exhibits accompanied what at the time was a substantial motion. Shortly thereafter, a continuance was granted the government for other reasons and various other motions were filed by the defendant. The filing of defendant's motion to dismiss also, in the district court's words, "evoked a flurry of corresponding assaults on this District's grand jury selection process" by other defendants in these related state highway contract cases. On April 24, the court ordered that pretrial motions be set for hearing on May 10 and that trial commence June 2, 1982. The court ultimately concluded that the effect of invalidating the grand jury process in Schmidt's case would have a substantial precedential impact on other defendants indicted by Schmidt's grand jury as well as by other grand juries in the district. For these reasons, the court concluded that Schmidt's grand jury motion "demanded something more than perfunctory judicial review." Accordingly, the court rescheduled hearings on the motion to allow for an evidentiary hearing (requested by defense counsel), for oral argument, and for time to consider further the issue presented. A hearing was thereafter set for September 24, 1982 where Schmidt's counsel, on behalf of all the highway contractor defendants,

presented extensive testimony and documentary evidence. On September 15, Schmidt filed his speedy trial motion. The court subsequently ruled that all delay was excludable it was the result of a pretrial motion excludable under § 3161(h)(1)(F), or was subject to the "ends of justice" provision of § 3161(h)(8)(A).

Section § 3161(h)(1)(F) provides that any "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of such motion" is excludable in computing the time within which a trial must commence. Schmidt contends that the words "other prompt disposition" imply that the exclusion is lost when a hearing is not held "promptly." He urges that any delay over 30 days is not reasonable, because the legislative history to § 3161(h)(1)(F) and § 3161(h)(1)(J) (which provides that any period of delay exceeding 30 days "during which any proceeding concerning the defendant is actually under advisement by the court" is not excludable) require such a limitation.

Schmidt's argument, however, is foreclosed by this court's recent decision in *United States v. Horton,* 705 F.2d 1414 (5th Cir.1983). In *Horton,* a similar construction of exclusion F was rejected by this court stating:

> The terms of exclusion F, quoted above, are all but absolute. They exclude "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing...." It is true that there follows a reference to "other prompt disposition" of the motion, one that might be taken to imply that such matters should be promptly disposed of and that might justify, in an egregious case, disregarding some portion of the pendency period. Such a case might be presented by repeated unsuccessful requests for hearings or by other credible indication that a hearing had been deliberately refused with intent to evade the sanctions of the Act. Nothing of the sort is evident here.

Id. at 1416. In *Horton,* the court found no unreasonable delay in the 213 day motion pendency involved. Likewise, as in *Horton,* no egregious case is presented by the present facts which reveal no repeated unsuccessful attempts on the part of defense counsel to schedule the hearings or other facts suggesting an intent to evade the sanctions of the Act. Faced with what the court perceived to be a complex and potentially far-reaching decision, the court postponed the original hearing to develop more fully the substance of the claim presented to it. The "conclusion of the hearing" not coming until September 24 (after defendant's September 15 motion had again tolled the seventy-day time period), the court properly concluded that the 128-day period was all properly excludable under exclusion F. To again quote our brethren in *Horton:*

> As Congress doubtless recognized in enacting exclusion F, today's motion practice in criminal cases can be, and often is, both complex and dispositive. That exclusion places no rigid time strictures on the practice whatever, and only the shadow of an implied one. Fidelity to its enactment requires rejection of appellants' contention.

Id. at 1416 (footnote omitted).

### Remaining Claims

Schmidt has raised an assortment of other less significant claims for our consideration on appeal.[3] Suffice it to say that we have considered each of them in light of the facts before us and the applicable law, and we conclude that they do not present meritorious claims. The judgment of the district court, therefore, is AFFIRMED.

---

**3.** Schmidt also raises challenges to: (1) portions of the jury instructions; (2) the lower court's denial of a motion to strike certain language from the indictment; (3) the prosecutor's closing argument; and (4) the prosecutor's questioning of certain witnesses.