**UNITED STATES of America,**
**Plaintiff-Appellee,**

*v.*

**Richard E. SCHUSTER, M.D.,**
**Defendant-Appellant.**

**No. 84–4705.**

United States Court of Appeals,
Fifth Circuit.

Nov. 26, 1985.

Johnston & Younger, Jerry T. Johnston, Michael P. Younger, Brandon, Miss., for defendant-appellant.

George Phillips, U.S. Atty., James B. Tucker, Asst. U.S. Atty., Jackson, Miss., for plaintiff-appellee.

Before GARZA, POLITZ and HILL, Circuit Judges.

POLITZ, Circuit Judge.

Richard E. Schuster, M.D., convicted of one conspiracy and 19 substantive counts for the unlawful dispensing and distribut-ing of controlled substances in violation of 21 U.S.C. §§ 846 and 841(a)(1), appeals, as-signing multiple errors. Although some assignments of error are meritorious, no challenge constitutes reversible error; ac-cordingly, we affirm the convictions.

## Facts

A proper disposition of several of the issues raised requires a detailed factual background. In mid-1981 agents of the federal Drug Enforcement Administration (DEA) and the Mississippi Bureau of Nar-cotics (MBN) began a joint investigation into what was then viewed as suspicious prescription-writing practices of Schuster. Two undercover agents posing as patients made a total of six visits. On each occa-sion they received prescriptions for con-trolled substances, without a medical exam-ination and for no legitimate medical re-gime nor purpose. The investigative team reviewed over 3,500 prescriptions and de-veloped a pattern by Schuster of prescrib-ing Schedule II controlled substances in excessive amounts to the same persons and to known drug addicts and drug abusers.

In November 1981, a search warrant was issued by a federal magistrate authorizing the search of Schuster's office for the medical and business records of persons falling into the two suspected categories. The warrant was issued on the basis of an affidavit prepared jointly by the DEA and MBN agents but actually signed by the MBN agent who declared in its text that he was supervised by and was working with the DEA agent. The search was conducted by both DEA and MBN agents, and the return on the warrant was made by the DEA agent.

The investigation apparently languished for awhile but was renewed with the is-suance and execution of a similar search warrant in April of 1983. A few days later, on April 21, 1983, Schuster was in-dicted for offenses spanning the period No-vember 1976–April 1983.

At his arraignment on April 26, 1983, Schuster agreed, as a condition of his re-lease on bail, to surrender his DEA certifi-

cate which authorized him to prescribe controlled substances. On May 31, 1983, Schuster's counsel filed a 99-page "Omnibus Motion" seeking various forms of relief, including a dismissal of the indictment for discrimination in the selection of the grand jury. Additionally, a challenge was made to the method of selecting the petit jury. This motion was supplemented on October 17, 1983 with a 19-page "Omnibus Motion." At a hearing on October 20, 1983, the trial judge took all motions then before the court under advisement, except that relating to the jury challenges. Defense counsel informed the court that the defense was not then ready to proceed on that motion and needed more time to prepare factual data. Defense counsel's request that the court continue the motion to an undesignated later date was granted.

In November, before the court could rule on the first Omnibus Motions, defense counsel filed a 35-page motion, together with 35 pages of exhibits, asserting Speedy Trial Act violations. A few days later counsel added 32 pages to that motion.

On December 14, 1983, the district court disposed of all issues raised in the Omnibus Motions except that part challenging the legality of the selection process for grand and petit jurors which had been continued at the request of defense counsel.

On January 30, 1984 the district court issued a memorandum opinion and order disposing of the motions filed in November 1983. The court therein addressed defendant's Speedy Trial Act complaint and found that as of that date "only eight days have ticked off the speedy trial clock, leaving sixty-two days from the present date within which the defendant's trial must commence, assuming there are no other motions filed by the defendant which would toll the time period." Defense counsel made no mention of the pending motion and took no steps to set it for hearing. Following local practice, the clerk of court did not move the case to the trial docket because of the pending motion.

After an unsuccessful effort to get defense counsel to seek a hearing on the jury-related motion, the United States Attorney moved for its rejection. In response, on June 15, 1984, defense counsel renewed his Speedy Trial Act claim. The district court promptly rejected the outstanding jury-claim motion, rejected the Speedy Trial Act challenge, and found as a fact that all intervening time since January 30, 1984 was excludable under 18 U.S.C. § 3161(h)(1)(F).[1]

The record reflects the filing of other motions by the defendant, including a request for a continuance, before the trial began on September 7, 1984. The government relied on documentary evidence, including medical files, medical pamphlets, and prescription records, as well as the testimony of fact witnesses and expert medical witnesses. Witnesses included the undercover agents and two physicians who attested to the lack of a legitimate medical purpose for the various drug prescriptions and injections ordered by Schuster.

On appeal, Schuster claims a Speedy Trial Act violation and complains of rulings on motions and various evidentiary rulings. He also complains of prosecutorial misconduct and asserts that the verdicts are not supported by the evidence.

### Analysis & Discussion

1. Speedy Trial Act.

    ██ The canon of appellate review for Speedy Trial Act complaints is the clearly erroneous standard as to the factual findings by the district court, with full review of legal conclusions. *United States v. Nance*, 666 F.2d 353 (9th Cir.), *cert. de-*

---

1. 18 U.S.C. § 3161(h)(1)(F) provides in pertinent part:

    The following periods of delay shall be excluded ... in computing the time within which the trial of any ... offense must commence:

    (1) Any period of delay resulting from other proceedings concerning the defendant, including but not limited to—
    (F) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion; ....

*nied,* 456 U.S. 918, 102 S.Ct. 1776, 72 L.Ed.2d 179 (1982). The defendant contends that the district court erred in denying his motion to dismiss for the Speedy Trial Act violation because the trial was not commenced within 62 days of the January 30, 1984 memorandum order. We are not persuaded. At the time of the entry of the January 30, 1984 ruling there was a defense motion pending, the one which had been continued for an indefinite period at defense counsel's request. Defendant made no effort to call that motion for hearing, and when the prosecutor sought its disposition, Schuster raised the shield of the Speedy Trial Act. Neither the words nor the spirit of the Speedy Trial Act extend to defendant the protection he now claims. The pending motion tolled the accrual of time under the Speedy Trial Act. 18 U.S.C. § 3161(h)(1)(F). Such time is automatically excludable and "all but absolute." *United States v. Horton,* 705 F.2d 1414, 1416 (5th Cir.1983), *cert. denied,* 464 U.S. 997, 104 S.Ct. 496, 78 L.Ed.2d 689 (1984). As we noted in *Horton,* 705 F.2d at 1416:

> As Congress doubtless recognized in enacting exclusion F, today's motion practice in criminal cases can be, and often is, both complex and dispositive. That exclusion places no rigid time strictures on the practice whatever, and only the shadow of an implied one.

That the trial court inadvertently may have overlooked the continued pendency of the jury-related motion when it entered the January 30, 1984 order does not by some legal legerdemain evanesce that motion. It continued to pend until withdrawn or ruled on. Although pending, it had not been taken under advisement, an act which would have triggered the 30-day constraint of § 3161(h)(1)(J). Defense counsel's request for a continuance prevented that motion from being taken under advisement. We conclude that the time from January 30, 1984 until the trial court ruled on the motion relating to the jury procedures, was excludable under the Speedy Trial Act. *United States v. Schmidt,* 711 F.2d 595 (5th Cir.), *reh'g. denied,* 716 F.2d 901

(1983), *cert. denied,* 464 U.S. 1041, 104 S.Ct. 705, 79 L.Ed.2d 169 (1984). Accordingly, the trial commenced timely.

**2. Loss of DEA license.**

■ Schuster maintains that his trial was rendered unfair when the prosecutor asked a former patient the following question: "Isn't it true that the reason you quit going to see Dr. Schuster was because he couldn't write prescriptions anymore?" The witness answered: "I guess so, yes." Defense counsel's objection was sustained, and the court instructed the government not to pose any more questions relating to Schuster's suspended DEA license. Counsel declined a cautionary instruction to the jury, apparently concerned that such might unduly underscore the question and answer.

Defendant contends that the question breached a pretrial agreement that the "voluntary" surrender of the license would not be mentioned and that the very posing of the question prejudiced the jury. We address only the latter, for without prejudice there is no reversible error. The controlling rubric provides:

> To require a new trial, the prejudicial effect of improper matter, viewed in the context of that particular trial, must not be overwhelmed by evidence of guilt. A significant possibility must exist that, considering the other evidence presented by both the prosecution and the defense, the [prejudicial] statement had a substantial impact upon the verdict of the jury.

*United States v. Arenas-Granada,* 487 F.2d 858, 859 (5th Cir.1973); *see also United States v. Rodrigues,* 524 F.2d 485 (5th Cir.1975), *cert. denied,* 424 U.S. 972, 96 S.Ct. 1474, 47 L.Ed.2d 741 (1976); *United States v. Robin,* 693 F.2d 376 (5th Cir.1982).

The defendant relies primarily on *United States v. Escamilla,* 666 F.2d 126 (5th Cir. 1982), a case we find non-dispositive and distinguishable. In *Escamilla* the only evidence tending to establish the fact suggested by the prejudicial statement was the

prejudicial statement itself. That is not the situation in the case at bar. The question should not have been asked, with or without the pretrial agreement. But this question and answer, in the setting posed, does not constitute reversible error when viewed against the totality of the evidence of Schuster's guilt.

### 3. Government's exhibits—summary charts.

■ Schuster assigns reversible error to the trial court's admission of several government exhibits which summarize voluminous documentary evidence and synopsize the evidence and other oral testimony. The exhibits are essentially a recompilation and summary arrangement of the prescriptions pertinent to the various counts in the indictment, together with explanations of the drug usages, potencies, and side effects.

Rule 1006 of the Federal Rules of Evidence authorizes the use of summary exhibits. We have cautioned that care must be taken in their preparation and use so as not to confuse or mislead the jury. *Myers v. United States*, 356 F.2d 469 (5th Cir.), *cert. denied*, 384 U.S. 952, 86 S.Ct. 1572, 16 L.Ed.2d 548 (1966). The requisite care was exercised in the instant case. Comprehensive and skillful cross-examination disclosed certain inaccuracies and also the probative datum that a medical text used to prepare one exhibit was contradicted by the recognized authority, the *Physicians' Desk Reference*. The trial judge cabined the effect of the summary exhibits by giving the following limiting instruction:

> The testimony of a summary witness and the charts or summaries prepared by him and admitted in evidence are received for the purpose of explaining facts disclosed by books, records, and other documents which are in evidence in the case. Such charts or summaries and the witness's explanation of such are not in and of themselves evidence or proof of any facts. If such charts or summaries or witness's explanation of such do not correctly reflect or state facts or figures

shown by the evidence in the case, you should disregard them. In other words, such charts or summaries are used only as a matter of convenience. So if and to the extent that you find they are not in truth summaries of facts or figures shown by the evidence in the case, you are to disregard them entirely.

Had we concluded that the trial judge abused his discretion by allowing use of these exhibits, no reversible error would be extant, for as we noted in *United States v. Jennings*, 724 F.2d 436, 442 (5th Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 2682, 81 L.Ed.2d 877 (1984):

> Even if it were determined that the trial court abused its discretion in allowing the use of the government's summary charts, we cannot see that [defendant] was prejudiced thereby. The full cross-examination and the trial court's admonitions to the jury served to minimize the risk of prejudice.

### 4. Tampered records.

■ Appellant contends that the court erred in permitting the introduction of tampered records. If evidence actually had been altered this assignment of error would have been a matter of grave consequence. Upon review of the record, however, we find more sound than substance to this charge. The purported tampering or alteration takes the form of underlining, bracketing, and highlighting a few words in the medical records. It is unclear who did this marking or when, but the amount is very small in comparison to the volume of documentary evidence. We find no change whatever in substance. This practice is neither erroneous nor objectionable. We are aware of the practice of using bookmarks or paper clips to locate certain entries a witness may refer to in the course of testifying. The instant practice is not significantly different. The matter would be viewed otherwise if the record disclosed that the party offering the documentary evidence had intentionally marked or highlighted select portions of a voluminous exhibit and, in so doing, had unduly empha-

sized only a part of the text in such a way as to confuse, deceive, or mislead the jury. But that is not the situation in the case at bar. There is no merit to this complaint.

■ Appellant further maintains that the medical files contained notes written by the investigators. Citing *Sanchez v. United States*, 293 F.2d 260 (5th Cir.1961), and *United States v. Brown*, 451 F.2d 1231 (5th Cir.1971), Schuster argues that this inclusion constitutes reversible error. We do not agree. *Sanchez* and *Brown* are inapposite, for in those cases notes condensing the government's position were filed in evidence and taken into the jury room during deliberations. That flagrancy did not occur here. The questioned notes did not contain a summation of the government's case or a reiteration of any testimony. Further, and in our view dispositive of the complaint, the notes were not presented to the jury. When brought to the court's attention, out of the jury's presence, the notes were ordered purged from the medical records. The jury never saw them. This complaint is frivolous.

5. Death of Paul Young.

■ Appellant next complains of the introduction into evidence, over his objection, of the death certificate of one Paul Young and of references to Young's death in closing argument. Paul Young was a patient of the defendant who died of a drug overdose. In a cross-examination worthy of the finest trial advocates, defense counsel developed that the drugs causing Young's overdose had not been prescribed by the defendant. The toxicological report reflected no trace in Young's body of any drug prescribed by Schuster. This death certificate should not have been admitted into evidence. Fed.R.Evid. 403. But no Rule 403 prejudicial effect/probative value objection was made. The issue was not preserved for appeal. Fed.R.Evid. 103(a)(1). Were we to conclude that "the specific ground was ... apparent," requiring no particular objection, *id.*, nonetheless, viewed against the entire record, we would find error but not reversible error. The reference to Young's death by the medical witness testifying when the certificate was introduced was very brief. The death was not dwelled upon. The import of the doctor-witness's testimony was that the drugs prescribed by Schuster had no legitimate medical purpose.

In closing argument the prosecutor referred to Young's tragic death, as well as to the death of one Bennie Oliver, another patient of the defendant who had overdosed and whose death actually was related to drugs Schuster prescribed. In that reference, the prosecutor merely noted an obvious fact: one addicted to drugs is on a "merry-go-round" which can be exited only by death or the pain and suffering of withdrawal.

In retrospect it is apparent that the death certificate of Young should have been excluded, and no reference to his death should have been made, but these acts, separately or together, do not so taint Schuster's trial as to mandate a reversal. In so ruling, we observe that in a proper setting, such evidence might be relevant and admissible as indicative of a cavalier attitude toward drugs dispensed and the consequences of their free use. *See United States. v. Blanton*, 730 F.2d 1425 (11th Cir.1984). Albeit troublesome, we perceive no reversible error in this assignment of error.

6. Testimony of Dr. Brown.

■ Appellant challenges the medical expertise of one government witness, David H. Brown, M.D. Brown testified that he had a medical degree and three years of residency in internal medicine and was licensed to practice medicine in three states. He was director of an alcoholic treatment center, a member of various medical associations including a national association concerned with alcohol and substance abuse. He was also the medical director of various halfway houses. The district court overruled the objection to Brown's qualification as a medical expert. We need hardly mention that the district court is vested with broad discretion in passing upon the quali-

fications of a tendered expert and that its decision will not be disturbed unless found to be "manifestly erroneous." *United States v. Viglia*, 549 F.2d 335, 337 (5th Cir.), *cert. denied*, 434 U.S. 834, 98 S.Ct. 121, 54 L.Ed.2d 95 (1977).

On cross-examination defense counsel challenged Brown's medical credentials and *bona fides*, arguably making several points. But those challenges bear more on the weight of Brown's medical opinions rather than on their admissibility. The allowance spectrum for expert testimony is broad, including any evidence that tends to "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed.R.Evid. 702. There was neither error nor abuse of discretion in allowing Brown to testify as an expert and to give his professional opinion in answer to the questions posed.

7. Insufficient evidence of intent.

■ Appellant contends that the evidence is insufficient to establish his intent to violate the law. In essence he maintains that his patients pulled the proverbial wool over his eyes and manipulated him, almost at will. We are not persuaded. Viewing the evidence in the light most favorable to the government, we find that it reflects a pervasive pattern of routine dispensing of drugs without a meaningful medical examination and for no significant medical purpose. The constant return of the same people, the continual presence of addicts and abusers, the repeated ordering of large drug dosages, all leave scant basis for arguing that the defendant-doctor was an innocent dupe of his drug-obsessed patients. We have held that criminal intent can be shown by, *inter alia*, (1) large quantities of prescribed substances; (2) large numbers of prescriptions; (3) a lack of physical examinations of patients; (4) lack of a therapeutic connection between alleged medical conditions and drugs prescribed; (5) the writing of prescriptions to patients known to share drugs with others;

(6) the issuing of prescriptions at intervals inconsistent with legitimate medical treatment; and (7) the writing of prescriptions on more than one occasion in order to spread them out. *United States v. Rosen*, 582 F.2d 1032 (5th Cir.1978). The government offered substantial evidence of these factors, and, although no direct evidence of Schuster's intent was proffered, the circumstantial evidence more than suffices to support the jury's verdicts.

8. Invalidity of search warrants.

■ Appellant claims that all evidence secured pursuant to the search warrants should be suppressed because the warrants were issued by the magistrate upon the affidavit of a state officer and were thus not in compliance with Rule 41(a) of the Federal Rules of Criminal Procedure. At first glance this contention seems to have merit, for Rule 41(a) refers to issuance of a search warrant "upon request of a federal law enforcement officer or an attorney for the government." Upon closer examination the apparent merit fades. The affidavit was signed by the state officer, but it was prepared under the supervision of the United States Attorney who presented it to the federal magistrate. The state agent attested to his supervision by the DEA. The warrant was issued to the DEA agent, and it was jointly executed by DEA agents and state agents. The return on the warrant was by the DEA agent. This scenario brings this warrant into compliance with Fed.R.Crim.P. 41(a). In so concluding we join our colleagues of the Ninth and Tenth Circuits in according a non-restrictive application to this Rule. *United States v. Johnson*, 641 F.2d 652 (9th Cir.1980); *United States v. Massey*, 687 F.2d 1348 (10th Cir. 1980).

9. Prosecutorial misconduct.

Appellant complains of three statements by the prosecutor during closing argument which were not objected to but which are now claimed to be plain error and, as such,

reviewable on appeal. Our examination reflects no error.

■ The first complaint involves the reference to the death of Paul Young, discussed *supra.* The second is to a comment that the jury should "get that prescription pad away from him." Arguably inappropriate, the statement may be considered as a "vigorous, but permissible, plea for law enforcement." *United States v. Caballero,* 712 F.2d 126, 131–32 (5th Cir.1983). *See also United States v. Canales,* 744 F.2d 413 (5th Cir.), *reh'g denied,* 750 F.2d 69 (1984). The third complaint refers to a comment by the prosecutor, during rebuttal, that the defendant was prosecuted in federal court rather than in state court because a local Mississippi sheriff was to be a defense witness. There was no error in this comment, made in response to defense counsel's rhetorical question in his closing argument, where he wondered aloud why the defendant was not being prosecuted in state court. On rebuttal, a prosecutor may fairly respond to defense counsel's closing argument. *United States v. Hiett,* 581 F.2d 1199 (5th Cir.), *reh'g denied,* 585 F.2d 520 (1978).

10. Delay to trial.

■ Schuster also argues that the 6½-year delay between the first criminal acts and his indictment mandates a reversal. We do not agree. *United States v. Avalos,* 541 F.2d 1100 (5th Cir.1976), *cert. denied,* 430 U.S. 970, 97 S.Ct. 1656, 52 L.Ed.2d 363 (1977). The sixth amendment does not limit the time for indictments; that is a matter for the Congress in establishing the limitations period for each offense. The sixth amendment is only implicated in the extreme case in which the defendant suffers prejudice from the delay. Such is not the situation now presented to us.

In addition to the foregoing, appellant's very able counsel have raised several other potential errors. We have reviewed each painstakingly and find no basis for reversing the jury's verdicts. Accordingly, we now AFFIRM.