**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Jesse Lara LOPEZ, Defendant-Appellant.**

**No. 76–1384.**

United States Court of Appeals,
Fifth Circuit.

Dec. 13, 1976.
Rehearing Denied Jan. 3, 1977.

John A. Pickens, Atlanta, Ga. (Court-appointed), for defendant-appellant.

John W. Stokes, U. S. Atty., Robert A. Boas, Asst. U. S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before AINSWORTH and RONEY, Circuit Judges, and ALLGOOD, District Judge.

ALLGOOD, District Judge:

Appellant Lopez was indicted on two counts of assaulting employees of the At-

lanta Federal Penitentiary in violation of 18 U.S.C.A. 111.[1] He was convicted by a jury on Count One alleging an assault on Associate Warden Robert L. Mulliken and acquitted on the second count which concerned an assault on another associate warden arising out of the same incident charged in Count One.

On March 12, 1975, Lopez, while a prisoner at the Atlanta Penitentiary, assaulted Mulliken and did not deny the incident at trial. Rather, Lopez contended primarily that he was not responsible for his actions by reason of insanity. This defense was predicated on the theory that a form of psychosis could result from prolonged periods of isolation and "sensory deprivation" which could induce such assaultive behavior. For various reasons, Lopez had spent six of the previous eight years in segregation units at several Federal penitentiaries under varying conditions and for intermittent periods. The evidence also tended to show that Lopez felt some hostility toward Mulliken for the refusal of the institution to immediately approve a Chicano Culture Studies Program which Lopez had helped organize. Mulliken, in fact, bore no responsibility for the institution's actions concerning this program.

A clinical psychologist, Dr. O. Henry Harsch, was called by the appellant in support of his defense of insanity. Dr. Harsch, who had had some experience with thought reformation, a field involving the study of the effects of sensory deprivation, concluded that Lopez was psychotic at the time of the incident and unable to control the impulse to assault Mulliken. Dr. Harsch based this opinion partially on his knowledge of Lopez' history of isolation.

Appellant then called Dr. Stephen Fox to testify further on the possibility that Lopez'

behavior was the product of sensory deprivation psychosis. Before allowing him to testify as an expert witness, however, the trial court conducted a voir dire examination of Dr. Fox's qualifications out of the presence and hearing of the jury. Dr. Fox testified that, while he is primarily a professor and scholar, his studies on over one hundred prison inmates subject to isolated confinement were conducted in a clinical setting for the purpose of diagnosis, counseling and recommendation of effective post-release programs for such prisoners. This, together with his previous experience in this field with the Navy and NASA, qualified him as the preeminent authority on the effects of sensory deprivation. Further examination revealed, however, that Dr. Fox is not a clinical psychologist, has never been licensed to practice clinical psychology in any state and therefore his primary experience was not in the treatment of the individuals studied. After an exhaustive and detailed examination of Dr. Fox's credentials, the trial court concluded that he did "not have the background of independent responsible diagnosis of mental diseases . . . nor qualifications in respect to what appears to be to the Court the necessary accounting for factors other than psychological factors in arrival at the ultimate question which might be helpful to the jury . . ." Dr. Fox's proffered testimony was thus excluded.

The trial court admitted the testimony of two psychiatrists who concluded that, while Lopez definitely suffered from certain personality disorders, he was not incapable of recognizing the wrongfulness of his acts or conforming his conduct to the requirements of the law.

█ Appellant contends that the exclusion of Dr. Fox's testimony is contrary to

---

1. 18 U.S.C.A. 111:

"Whoever forcibly assaults, resists, opposes, impedes, intimidates or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of his official duties, shall be fined

not more than $5,000 or imprisoned not more than three years, or both."

18 U.S.C.A. 1114:

". . . any officer or employee of any United States penal or correctional institution . . . ..".

Rule 702 of the Federal Rules of Evidence[2] and Justice Burger's concurring opinion in *Jenkins v. United States,* 113 U.S.App.D.C. 300, 307 F.2d 637 (1962) and therefore constitutes reversible error. Our analysis begins with the well-settled rule that the admissibility of expert testimony is a matter which rests within the broad discretion of the trial judge and his decision is not to be disturbed unless it is manifestly erroneous. *Salem v. U. S. Lines Co.,* 370 U.S. 31, 35, 82 S.Ct. 1119, 8 L.Ed.2d 313 (1962); *Keystone Plastics, Inc. v. C & P Plastics, Inc.,* 506 F.2d 960 (5th Cir. 1975). While Rule 702 permits the trial court to admit expert testimony if it will "assist the trier of fact" and thus somewhat broadens the range of admissibility, it by no means mandates admission of such testimony, and great deference is given to the discretionary ruling of the court in such cases. This Court has often recognized that any and all relevant testimony on the issue of insanity should be heard, *United States v. Davis,* 523 F.2d 1265 (5th Cir. 1975); *Blake v. United States,* 407 F.2d 908 (5th Cir. 1969), and we do not hold that it would have been error to admit the testimony of Dr. Fox. However, the trial judge is uniquely suited to make such determinations and we are loath to overturn his considered judgment as to the admissibility of expert testimony. See *Karp v. Cooley,* 493 F.2d 408, 424–25 (5th Cir. 1974), cert. denied, 419 U.S. 845, 95 S.Ct. 79, 42 L.Ed.2d 73, *quoting Bridger v. Union Railway Co.,* 355 F.2d 382, 387 (6th Cir. 1966).

In *Jenkins v. United States,* 113 U.S.App. D.C. 300, 307 F.2d 637 (1962), the District of Columbia Circuit addressed the particular problem of the ability of psychologists vis a vis psychiatrists to render expert testimony on the issue of insanity. In his majority opinion, Judge Bazelon found that lack of a medical degree does not automatically disqualify one from testifying as an expert as to the sanity of a defendant but that the critical factor was the proffered witness' skill or experience in the diagnosis and treatment of mental diseases. After finding that some psychologists are qualified as experts in this respect, the Court carefully noted that clinical psychologists were much better prepared to give such testimony than psychologists without clinical training and cautioned that those who "teach and engage in theoretical research in fields unrelated to the diagnosis and treatment of mental disease" are seldom qualified to testify. 307 F.2d at 644. Chief Justice Burger, then sitting as a Circuit Judge, directed his concurring opinion toward providing some guidance to the trial court in its inquiry into the qualifications of the expert and did not essentially disagree with the basis for the court's holding in *Jenkins.*

██ In the case before us, the trial court conducted a searching and thorough examination of Dr. Fox's qualifications and his proffered testimony. The fact that Dr. Fox lacked a medical degree was only one of the considerations leading to the conclusion that Dr. Fox's skill and experience did not qualify him to state an opinion which would be helpful to the jury on the sanity of the defendant. We are satisfied that the trial judge's inquiry was complete and explored all relevant areas of the expert's background and find no manifest error in his conclusion.

Lopez also urges that the trial judge's refusal to instruct the jury as to his defenses of provocation and entrapment was erroneous and warrants reversal of the conviction. We have carefully examined these contentions and find them without merit. Accordingly, the judgment of conviction is affirmed.

AFFIRMED.

---

2. Fed.Rules Evid.Rule 702, 28 U.S.C.A.:

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."