**STATE of Iowa, Plaintiff-Appellee,**

v.

**Michael Lee GRIFFIN,
Defendant-Appellant.**

No. 85–239.

Court of Appeals of Iowa.

April 23, 1986.

Charles Harrington, Chief Appellate Defendant, and B. John Burns, Asst. Appellate Defender, for defendant-appellant.

Thomas J. Miller, Atty. Gen., Christie J. Scase, Asst. Atty. Gen., and James C. Bauch, Co. Atty., for plaintiff-appellee.

Heard by DONIELSON, P.J., and SNELL and SACKETT, JJ.

DONIELSON, Presiding Judge.

The defendant, Michael Lee Griffin, appeals from his convictions for simple assault and assault with intent to inflict serious injury. He contends the trial court erred by excluding his proffered expert testimony concerning the effects of diabet-

ic reaction and stress on behavior.[1] He also contends his trial attorney rendered ineffective assistance by failing to request an instruction on diminished capacity due to diabetic reaction and stress.

Griffin, a student at the University of Northern Iowa, was accused of assaulting two professors during a conference called to discuss problems with Griffin's grades and behavior. After a jury trial, Griffin was convicted of simple assault, a violation of Iowa Code sections 708.1 and 708.2(3), and assault with intent to inflict serious injury, a violation of Iowa Code sections 708.1 and 708.2(1). Griffin has appealed from these convictions.

Griffin sought to establish the defense that he had a diabetic reaction during the incident which resulted in diminished capacity. Griffin's expert, Dr. Clemens Bartollas, a criminologist at the University of Northern Iowa, who has written seven books and previously studied assault and battery offenders, testified that his research regarding the effects of biochemical factors on behavior indicated diabetes could have an adverse impact on one's behavior. This witness further stated he knew Griffin and observed the defendant under stress from his diabetes affliction two days before the incident. This witness then was asked whether the diabetes affected Griffin's behavior during the incident. The State's objection to this question was sustained. Pursuant to an offer of proof, Dr. Bartollas testified that because Griffin experiences mood swings during diabetic reactions had Griffin not been a diabetic, the incident probably would not have taken place.

## I.

As to the admission of expert testimony, Iowa provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

Iowa R.Evid. 702. It is also well-established that the trial court has wide discretion in admitting such evidence and we will not interfere unless the trial court manifestly abused its discretion. *See State v. Taylor,* 336 N.W.2d 721, 726 (Iowa 1983); *State v. Dvorsky,* 322 N.W.2d, 62, 64 (Iowa 1972); *State v. Mayhew,* 170 N.W.2d 608, 609 (Iowa 1969).

Griffin directs us to two cases, *United States v. Barker,* 553 F.2d 1013 (6th Cir. 1977), and *Jenkins v. United States,* 307 F.2d 637 (D.C.Cir.1962), to establish that Dr. Bartollas should have been allowed to give an expert opinion as to whether a diabetic reaction could have affected Griffin's behavior on the day in question.

*Barker* involved a person who defendant wanted to give expert testimony on fingerprints. The witness had taken a training course and worked for a year and a half as a fingerprint analyst, however, nearly twelve years had passed until the witness began working again with fingerprints. 553 F.2d at 1023. The trial court told the jury to disregard this witness' opinions because he was not an "outstanding practitioner in his field." *Id.* at 1024. The court of appeals reversed because a witness need not be an outstanding practitioner to be deemed an expert under modern evidentiary rules and the jury should decide which expert to believe if contradictory expert testimony exists.

*Jenkins* involved admission of a psychiatrist's opinions and a psychologist's opinions. The psychiatrist's opinion amounting to a diagnosis, which was based on earlier

---

**1.** Griffin originally challenged Black Hawk County's procedure for apportioning its jury pool among the county's precincts; he contended the procedure resulted in an under representation of black persons and economically disadvantaged persons. Because defendant's challenge to the Black Hawk County jury selection procedures was identical to an issue rejected by the supreme court in three opinions filed in January 1986, *Cooper v. State,* 379 N.W.2d 917 (Iowa 1986); *State v. Myers,* 384 N.W.2d 1 (Iowa 1986), and *State v. Walk,* 384 N.W.2d 1 (Iowa 1986); he withdrew this issue from consideration.

examinations and later test results, was admitted even though the doctor had not personally seen this patient. 307 F.2d at 641–42. We note the expert in this case was a doctor who normally gave diagnosis without personally observing his patients.

As to the psychologist's opinions testimony, the court noted psychologists are not qualified to give medical opinions, but can testify as to mental disorders. *Id.* at 643. The court then found that the title "psychologist" was not determinative of whether such a person was qualified to give expert testimony because clinical psychologists, who given their professional background of diagnosis and treatment of disorders, are qualified to testify as to mental disorders. *Id.* at 645. The court held that lack of a medical degree, by itself, does not automatically disqualify a psychologist from giving testimony on mental disorders. *Id.* at 646. The court held, however, that those psychologists without clinical training who teach and research in fields unrelated to diagnosis and treatment of mental disease are seldom qualified to testify. *Id.* at 644. Defendant relies on this authority to establish that even though Dr. Bartollas has not engaged in clinical diagnosis for nearly thirteen years like the expert in *Barker,* he was qualified to testify because he had clinical experience as required under *Jenkins.*

The State directs us to *United States v. Lopez,* 543 F.2d 1156 (5th Cir.1976) *cert. denied,* 429 U.S. 1111, 97 S.Ct. 1150, 51 L.Ed.2d 566 (1917) and *United States v. Huber,* 603 F.2d 387 (2d Cir.1979) *cert. denied,* 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980), as authority for the proposition that Dr. Bartollas' testimony was properly not admitted.

In *Lopez,* the defendant sought to have expert testimony from a Dr. Fox admitted. Dr. Fox was a professor and scholar who conducted studies on prison inmates for diagnosis purposes. 548 F.2d at 1157. The court, nonetheless, did not allow Dr. Fox to testify on the possibility that defendant's behavior, which involved assaulting the warden, was the result of sensory deprivation psychosis. *Id.* The court reviewed *Jenkins* and stated that the trial court's decision not to allow Dr. Fox to testify because he "lacked a medical degree was only one of the considerations leading to the conclusion that Dr. Fox's skill and experience did not qualify him to state an opinion which would be helpful to the jury on the sanity of the defendant." 548 F.2d at 1158. The court found no manifest error in the trial court's decision.

In *Huber,* the defendant sought to have a witness testify as an expert in the field of psychoanalysis that defendant lacked the mental state to support convictions. The court stated:

> The witness did testify as a business expert. He is a professor of economics at Harvard Business School. He has also studied psychoanalysis at the Boston Psychoanalytic Institute, and, though he has had no medical training, is certified as a psychoanalyst by the American Psychoanalytic Institute. He has treated people regularly without supervision for a number of years. Judge Tenney heard the proffered testimony in the absence of the jury, and ruled the witness unqualified to testify as an expert concerning appellant's mental state. While we do not say that all of us would have ruled the same way, we hold that the district judge did not abuse his broad discretion in deciding that this witness was not qualified in this case. *See, e.g., Hamling v. United States,* 418 U.S. 87, 108, 94 S.Ct. 2887, [2903] 41 L.Ed.2d 590 (1974); *United States v. Bermudez,* 526 F.2d 89, 98 (2d Cir.1975), *cert. denied,* 425 U.S. 970, 96 S.Ct. 2166, 48 L.Ed.2d 793 (1976). This is particularly so in light of the fact that two psychiatrists did testify as experts concerning appellant's mental state, and thus the defense based on appellant's asserted lack of free will was presented to the jury.

603 F.2d at 399.

Based on these instructive cases, we cannot find the trial court's decision to exclude Dr. Bartollas' testimony was a manifest abuse of discretion. Dr. Bartollas

was not a medical doctor, but was qualified to give testimony on the effects of diabetes on behavior generally. Dr. Bartollas, while previously engaged in clinical diagnosis like the expert in *Barker*, is a researcher and teacher. The problems with Dr. Bartollas' testimony is that it was never established that Griffin had a diabetic reaction during the incident and that even if Griffin did have such a reaction that Griffin would not have displayed this aggressive behavior if he was not a diabetic. Despite *Barker* and *Jenkins*, we do not think Dr. Bartollas' training was sufficient to testify that, had Griffin not been a diabetic, this incident probably would not have happened. The court did allow Dr. Bartollas to testify that Griffin was diabetic, that he did become irritable when he had a reaction, and that he "lost control" when he attacked the professors. We find no error occurred.

## II.

■ Griffin's other alleged error is that defense counsel was ineffective for not requesting an instruction of diminished capacity and failing to object to the absence of such instruction. To prevail on an ineffective assistance of counsel claim, petitioner must establish: (1) that counsel's performance was so deficient that counsel was not functioning as "counsel" guaranteed by the sixth amendment, and (2) that the deficient performance so prejudiced the defense as to deprive the petitioner of a fair trial. *State v. Losee*, 354 N.W.2d 239, 243 (Iowa 1984) (*citing Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984)). It is not necessary that "a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the petitioner makes an insufficient showing on one. *Strickland*, 466 U.S. at 697–698, 104 S.Ct. at 2069–70, 80 L.Ed.2d at 699; *accord Taylor v. State*, 352 N.W.2d 683, 685 (Iowa 1984).

Because *Strickland* enables us to address the prejudice component first which enables us to eschew addressing whether defense counsel failed to perform an essential duty in light of the fact no postconviction proceeding testimony from defense counsel is available, we address this issue.

■ Even if defense counsel failed to perform an essential duty regarding his handling of the diminished capacity defense, we cannot find the requisite prejudice. A jury cannot be instructed on a diminished capacity defense unless the record contains *"substantial* evidence that the defendant was incapable of formulating the intent which is necessary for" [premeditation] the crime charged. *State v. Hickman*, 337 N.W.2d 512, 517 (Iowa 1983) (Case involved insanity and diminished responsibility defenses.). (emphasis in original). Although Griffin was diabetic and Dr. Bartollas testified as to the affects diabetes could have on behavior, which is *some* evidence defendant was incapable of forming the requisite intent, we find *substantial* evidence is missing because it was never established that Griffin suffered a diabetic reaction during the incident. Griffin did not claim his diabetic condition caused his reaction until well after charges were filed.

Further, given the overwhelming evidence against Griffin on these charges, we cannot find prejudice resulted to defendant in this case. The jury was also instructed as to the need to find specific intent to commit the act as defined in instruction No. 12. *Cf. State v. Goff*, 342 N.W.2d 830, 831–38 (Iowa 1983) (Specific intent, which was essential element of crime charged, was omitted from instructions, yet no prejudicial error resulted). The testimony by the defense could have negated specific intent. The jury had to find specific intent to convict Griffin which they obviously did so find.

For these reasons, we affirm defendant's conviction.

**AFFIRMED.**

SNELL, J., concurs.

SACKETT, J., specially concurs.

SACKETT, Judge specially concurring.

The general rule in Iowa is one of liberality in the admission of opinion evidence. *See State v. Halstead,* 362 N.W.2d 504, 506 (Iowa 1985); *State v. Hummell,* 228 N.W.2d 77, 82 (Iowa 1975). I cannot agree with the majority's blanket assertion that Bartolla's training was not sufficient to allow him to testify had defendant not been diabetic the incident probably would not have happened.

However, I agree with the majority because I find, as did the majority, that defendant has failed to meet the difficult standard of making a clear showing the trial court abused its discretion in refusing to admit the opinion evidence. *State v. Halstead,* 362 N.W.2d 504, 506 (Iowa 1985); *State v. Morrison,* 323 N.W.2d 254, 256 (Iowa 1982). I also agree with the majority that defendant failed to prove the elements necessary to prevail on an ineffective assistance of counsel claim.