**UNITED STATES of America, Plaintiff,**

v.

**Darrell Lamont BAILEY, Defendant.**

**Crim. No. 94 CR 152–N.**

United States District Court,
D. Colorado.

Sept. 7, 1994.

Kyra E. Jenner, Asst. U.S. Atty., Denver, CO, for plaintiff.

Darrell Lamont Bailey, pro se.

Raymond P. Moore, Advisory Counsel, Federal Public Defender, Denver, CO, for defendant.

## MEMORANDUM OPINION
## AND ORDER

NOTTINGHAM, District Judge.

A federal grand jury indicted Defendant Darrell Lamont Bailey on two counts of assaulting, resisting, or impeding federal-prison officers in violation of 18 U.S.C.A. § 111(a) (West Supp.1994). Defendant's case has not yet proceeded to trial. The matter is now before the court on defendant's pre-trial "Motion to Dismiss Indictment and Objection to Trial by Petit Jury Drawn from Current Master Wheel" filed August 3, 1994. The motion generally alleges that the procedures used to create the master jury wheel from which the grand jury was drawn, and from which a petit jury will be drawn, substantially failed to comply with the Jury Selection and Service Act of 1968, 28 U.S.C.A. §§ 1861–1869 (West 1994) [hereinafter the "Jury Selection Act"].

## BACKGROUND

Before I address the specific issues raised in defendant's motion, it is necessary to outline the procedural requirements of the Jury Selection Act and the jury selection process employed by the United States District Court for the District of Colorado. Congress enacted the Jury Selection Act to ensure that (1) all potential grand and petit jurors are selected at random from a fair cross section of the community and (2) all qualified citizens have an opportunity to be considered for jury service. 28 U.S.C.A. § 1861; see United States v. Barnette, 800 F.2d 1558, 1567 (11th Cir.1986), cert. denied, 480 U.S. 935, 107 S.Ct. 1578, 94 L.Ed.2d 769 (1987); United States v. Bearden, 659 F.2d 590, 593 (5th Cir. Unit B Oct. 1981), cert. denied, 456 U.S. 936, 102 S.Ct. 1993, 72 L.Ed.2d 456 (1982). The Jury Selection Act specifically prohibits the exclusion of grand and petit jurors "on ac-

count of race, color, religion, sex, national origin, or economic status." 28 U.S.C.A. § 1862.

Pursuant to the Jury Selection Act, each federal district court must "devise and place into operation a written plan for random selection of grand and petit jurors" consistent with the objectives of randomness and nondiscrimination set forth in sections 1861 and 1862. 28 U.S.C.A. § 1863(a); *see Barnette,* 800 F.2d at 1567; *Bearden,* 659 F.2d at 593–94. Among other requirements, the local plan must include procedures which "ensure that each county ... within the district or division is *substantially proportionally represented* in the master jury wheel for that judicial district, division, or combination of divisions." 28 U.S.C.A. § 1863(b)(3) (emphasis added). Section 1863(b)(3) also states that, "[f]or the purposes of determining proportional representation in the master jury wheel, either the number of actual voters at the last general election in each county, ... or the number of registered voters if registration of voters is uniformly required throughout the district or division, may be used." 28 U.S.C.A. § 1863(b)(3); *see* 28 U.S.C.A. § 1863(b)(2) (local plan must "specify whether the names of prospective jurors shall be selected from the voter registration lists or the lists of actual voters of the political subdivisions").

In January 1993, this district devised and implemented the Amended Plan for the Random Selection of Grand and Petit Jurors (the "Amended Plan"), pursuant to 28 U.S.C.A. § 1863(a). (*See* Pl.'s Resp. to Def.'s Mot. to Dismiss Indictment and Objection to Trial by Petit Jury Drawn from Current Master Jury Wheel, Ex. 1 [Am.Plan] [filed Aug. 25, 1994] [hereinafter "Pl.'s Resp."].). For the purpose of selecting federal juries, Colorado's 63 counties are divided into four geographic divisions, each named for a city where court is held within that division: Denver (23 counties), Grand Junction (14 counties), Pueblo (21 counties), and Durango (5 counties). In accordance with both the Jury Selection Act and the Amended Plan, the clerk of the court utilizes Colorado's voter registration list as the primary source of names for potential grand and petit juries. *See* 28 U.S.C.A.

§ 1863(b)(2)–(3). (*See* Pl.'s Resp., Ex. 1 at 3 [Am.Plan].) However, in order to further the statutory policy of selecting prospective jurors from a "fair cross section of the community," the clerk supplements the voter registration list with the state's record of licensed drivers who are not also registered voters. *See* 28 U.S.C.A. §§ 1861, 1862, 1863(b)(2). (*See* Pl.'s Resp., Ex. 1 at 3 [Am. Plan].) The voter registration and drivers license lists provide relevant information for each of the counties within the judicial district's four divisions. Neither of these lists contains information about race, national origin, or religion.

It is important to distinguish between the use which the clerk makes of the voter registration list and the use she makes of the licensed driver list. Although the combination of (1) the voter registration list and (2) the record of licensed drivers (less any duplicate entries of persons already on the voter registration list) constitutes the "source list" from which the names of potential jurors will ultimately be drawn, section 1863(b)(3)—quoted above—mandates that the court clerk first use *only* the voter registration list, not the entire source list, to determine the proportional representation of each county in the master jury wheel. *See* 28 U.S.C.A. § 1863(b)(2)–(3). (*See* Pl.'s Resp., Ex. 1 at 3–4 [Am.Plan].) Consistent with the statute, the Amended Plan provides:

> The number of names to be drawn from each county [for placement in the master wheel] shall be substantially in the same proportion to the total number drawn from all counties within the division as the number of names on that county's voter registration list bears to the total number of names on the voter registration list for all counties within that division.

(*Id.* at 3.) To fill the master jury wheel under the procedures mandated by statute and the Amended Plan, the clerk first ascertains from the voter registration list (sometimes abbreviated "VRL") the number of registered voters in each county. Second, she calculates the ratio which that number bears to the number of registered voters within the entire division and expresses that ratio as a percentage. Third, having predetermined the *total number* of names to be

placed in the master jury wheel for the division, she multiplies that total number by each county's percentage to arrive at the number of names which must be drawn from each county to ensure that the county's representation in the master jury wheel is the same as its portion of registered voters in the division.

The proportional-representation calculation required by the statute and the Amended Plan is exemplified by the following table concerning the Durango Division (which I use for illustrative purposes, solely because it is the smallest of the four divisions):

| County | Number of Persons on VRL | Percentage of Division Total VRL | County Percentage × 8,000 (Size of Division Wheel) |
|---|---|---|---|
| Archuleta | 2,758 | 11.74 | 939 |
| Dolores | 931 | 3.96 | 317 |
| La Plata | 11,650 | 49.59 | 3967 |
| Montezuma | 7,683 | 32.70 | 2616 |
| San Juan | 473 | 2.01 | 161 |
| DIVISION TOTAL | 23,495 | 99.97 | 8,000 |

As the table indicates, the clerk determined (or was told) that the master jury wheel for the Durango Division would consist of 8000 names. Using the voter registration list, she determined, for example, that there were 2758 registered voters in Archuleta County. Mathematically, this is 11.74% of the total number of registered voters in the Durango Division. To maintain this percentage in the division's master jury wheel, 939 of the division's 8000 names should come from Archuleta County.

Having determined the number of names to be drawn from each county in accordance with the procedures just outlined (using only the voter registration list), the clerk is then ready to use the source list—the list which consists of registered voters plus licensed drivers. She compiles the master jury wheel for the division, using a computer to randomly draw names, not from the voter registration list alone, but from the source list composed of registered voters plus licensed drivers. The clerk "refills" the divisions' respective master jury wheels every two years, using updated lists.

The motion at issue concerns the validity of the divisions' current master jury wheels, which the clerk compiled in October 1993. The parties concede that the clerk failed to use the actual voter registration list as the proportional-representation benchmark for 13 of the 63 counties within the district. At least one of the errors was made in each of the four jury divisions. In most instances, instead of using only the voter registration list as the basis for the relevant calculations, the clerk used the county's source list, which, of course, included both licensed drivers *and* registered voters in the county. This specific error overstated proportional shares for the counties as to which she made this mistake and understated proportional shares for the remaining counties in the division. In some instances it is unclear how the clerk derived the number used. In any event, because the threshold numbers are inaccurate, each of the subsequent calculations are inaccurate, and the master jury wheels fail to reflect the exact proportional representation of each county. Based on these errors, defendant moves to dismiss the indictment or, in the alternative, for a stay of further proceedings pending the selection of grand and petit juries in conformity with the Jury Selection Act. *See* 28 U.S.C.A. § 1867(d).

## ANALYSIS

■ The Jury Selection Act provides relief only for a "substantial failure to comply" with its provisions concerning the selection of potential grand and petit jurors. 28 U.S.C.A. § 1867(a). Congress added the word "substantial" to allow for harmless error. *Bearden,* 659 F.2d at 600. In *United States v. Gregory,* 730 F.2d 692 (11th Cir.1984), *cert. denied,* 469 U.S. 1208, 105 S.Ct. 1170, 84

L.Ed.2d 321 (1985), the Eleventh Circuit observed:

[A]lleged violations must be weighed against the underlying principles of the Act. A substantial violation of the Act will be found only when two important general principles are frustrated: (1) random selection of juror names and (2) use of objective criteria for determination of disqualifications, excuses, exemptions, and exclusions. Mere "technical" deviations from the Act or even a number of them are insufficient if they do not frustrate the obtaining of jury lists that represent a cross section of the relevant community and do not result in impermissible forms of discrimination and arbitrariness.

*Id.* at 699; *see Barnette,* 800 F.2d at 1567; *Bearden,* 659 F.2d at 600–01; *United States v. LaChance,* 788 F.2d 856, 870 (2d Cir.) ("Mere 'technical' violations of the procedures prescribed by the Act do not constitute 'substantial failure to comply' with its provisions."), *cert. denied,* 479 U.S. 883, 107 S.Ct. 271, 93 L.Ed.2d 248 (1986); *United States v. Schmidt,* 711 F.2d 595, 600 (5th Cir.1983) ("Mere technical deviations from the Act constitute neither a substantial noncompliance nor frustration of the principles of the Act."), *cert. denied,* 464 U.S. 1041, 104 S.Ct. 705, 79 L.Ed.2d 169 (1986). Whether a violation is "substantial" or merely "technical" for the purpose of the Jury Selection Act depends upon the nature and extent of its effect on the jury wheel. *LaChance,* 788 F.2d at 870.

In this case, defendant's motion implicates only the first underlying principle of the Jury Selection Act—the random selection of juror names. The parties agree that the clerk's errors affected, to some degree, the propor-

tional representation of most (if not all) counties within the judicial district. The determinative question is whether the errors constitute a "substantial failure to comply" with the Jury Selection Act or merely a technical violation for which defendant is not entitled to relief. The impact of the errors on the grand jury pool differs from the impact on petit jury pools.

### 1. *Selection of Potential Grand Jurors*

■ All grand juries in this district sit in Denver, but members are selected from a pool which encompasses all four geographic divisions of the district. The Amended Plan sets forth the procedure for selecting potential grand jurors and provides in relevant part:

From time to time, as grand juries are required, the Court shall order the drawing from each division's qualified wheel, a pro rata share of the total number of grand jurors to be summoned. The pro rata share shall be based on the total number of persons on the voter registration list of each division as compared to the total number of persons on the voter registration list of all divisions.

The clerk's office implemented this selection process when it compiled the grand jury pool at issue in this case. Because the clerk derived the grand jury pool from the divisions' wheels, however, the initial errors generated when the clerk assembled the divisions' respective jury wheels impacted the geographical composition of the grand jury pool. Consequently, the pool of 300 potential grand jurors was distributed among the four divisions as follows:

| Division | Clerk's Calculation Persons on VRL | Clerk's Calculation % Total VRL | Clerk's Calculation Persons on Grand Jury Panel |
|---|---|---|---|
| Denver | 1,173,020 | 72.80 | 218 |
| Pueblo | 290,844 | 18.00 | 54 |
| Grand Junction | 123,997 | 7.70 | 23 |
| Durango | 23,803 | 1.50 | 5 |
| DISTRICT TOTAL | 1,611,664 | 100.00 | 300 |

In contrast, if the clerk had utilized the accurate voter registration numbers for every county in each of the four divisions, the grand jury pool would reflect the following divisional composition:

| Division | Actual Information Persons on VRL | Actual Information % Total VRL | Actual Information Persons on Grand Jury Panel |
|---|---|---|---|
| Denver | 1,123,849 | 72.31 | 217 |
| Pueblo | 287,211 | 18.48 | 55 |
| Grand Junction | 119,694 | 7.70 | 23 |
| Durango | 23,495 | 1.51 | 5 |
| DISTRICT TOTAL | 1,554,249 | 100.00 | 300 |

Based on these errors, defendant seeks a dismissal of the indictment or a stay of further proceedings pending the selection of another grand jury. *See* 28 U.S.C.A. § 1867(d). Defendant argues that he is entitled to relief because (1) the clerk failed to properly use the voter registration list when determining the proportional representation of each county in the divisions' respective master jury wheels and (2) that taint in turn affected the grand jury pool, which the clerk selected from the divisions' qualified wheels. His argument is without merit. As the tables demonstrate, the Denver Division is over-represented in the grand jury pool by only one person, and the Pueblo Division is under-represented by only one person. (*See* Br. in Supp. of Mot. to Dismiss Indictment and Objection to Trial by Petit Jury Drawn from Current Master Jury Wheel, Ex. 14 [filed Aug. 17, 1994] [hereinafter "Def.'s Br."]; Pl.'s Resp., Ex. 4.) The number of grand jurors from the Grand Junction and Durango Divisions remains unchanged. (*See* Def.'s Br., Ex. 14; Pl.'s Resp., Ex. 4.) In addition, statistical evidence offered by the Government—unchallenged by defendant— indicates that there was absolutely no impact on the racial composition of the grand jury pool. (*See* Pl.'s Resp., Ex. 3, App. A.)

The relatively minor variation in the structure of the grand jury pool is inconsequential. Notwithstanding the clerk's errors, each of the divisions and, for reasons discussed below in the context of the petit jury pool, each of the counties within the respective divisions, is substantially proportionally represented in the master jury wheel. The clerk's inadvertent errors, therefore, did not constitute a substantial failure to comply with the provisions of the Jury Selection Act. *See United States v. Hawkins,* 661 F.2d 436, 443 (5th Cir. Unit B Nov. 1981) (upholding selection process which resulted in under-representation of one division by approximately 2 grand jurors and over-representation of another division by approximately 1.5 grand jurors on an average panel of 23 members), *cert. denied,* 456 U.S. 991, 102 S.Ct. 2274, 73 L.Ed.2d 1287 (1982); *United States v. Maskeny,* 609 F.2d 183, 191 (5th Cir.) (rejecting challenge based on under-representation of division by 3 grand jurors), *cert. denied,* 447 U.S. 921, 100 S.Ct. 3010, 65 L.Ed.2d 1112 (1980); *see also Gregory,* 730 F.2d at 699 ("Venires or grand juries need not reflect county populations exactly."). Accordingly, defendant is not entitled to a dismissal of the indictment or a stay of the proceedings pending the selection of another grand jury.

### 2. Selection of Potential Petit Jurors

Defendant argues that, even if the grand jury selection process is valid, he is entitled to a stay of further proceedings pending the selection of a petit jury in conformity with the Jury Selection Act. *See* 28 U.S.C.A. § 1867(d). In this context, defendant generally maintains, on his own behalf, that he is entitled to relief because the clerk's errors impacted the racial composition of the Denver Division's master jury wheel. Advisory counsel also advances an alternative, and somewhat contradictory, argument. According to advisory counsel, the relevant inquiry in this context is not the statistical impact of

the clerk's errors with respect to individual counties or any resulting under-representation or over-representation of certain groups in the master jury wheel. Rather, advisory counsel argues that the requested relief is appropriate simply because (1) the clerk's office failed to comply with the statutory "mandate" concerning the use of accurate voter registration lists and (2) the clerk's non-compliance affected a substantial number of counties within the Denver Division. (Def.'s Br. at 4–7.) In other words, contends defendant, the substantiality of a deviation from the statutory conditions is measured in terms of the number of counties are affected *to any degree whatsoever.* I will address each argument in turn.

■ Defendant is not entitled to relief based on the argument that the clerk's use of the current master jury wheel would preclude the random selection of jurors from a "fair cross section of the community." *See* 28 U.S.C.A. § 1861. In order to prove a violation of the "fair cross section" standard, defendant must demonstrate that (1) the procedures employed by the clerk "systematically excluded" a distinctive or cognizable group from the selection process and (2) as a result of that exclusion, the jury pool "failed to be reasonably representative" of the community. *United States v. Test,* 550 F.2d 577, 585 (10th Cir.1976); *see United States v. Foxworth,* 599 F.2d 1, 3 (1st Cir.1979). "Mere geographical imbalance, absent evidence that an identifiable and cognizable segment of the community has been systematically excluded or under represented by reason of such imbalance, does not violate the statutory and constitutional [fair cross section requirement]." *Test,* 550 F.2d at 582 n. 4; *see Foxworth,* 599 F.2d at 4 (county residents are not a cognizable group for the purpose of the Jury Selection Act) (citing *United States v. Butera,* 420 F.2d 564, 571–72 [1st Cir. 1970] ).

Defendant's racial disparity argument fails on both fronts. The statistical disparities caused by the clerk's errors in this case do not support an inference of systematic exclusion. As indicated by the following table concerning the Denver Division, the difference between (1) the expected minority representation using the clerk's erroneous voter-registration distributions and (2) the expected minority representation using the actual voter-registration distributions is minimal.

| Minority Group | Clerk's Information Expected Representation | Actual Information Expected Representation | Variation |
|---|---|---|---|
| African–American | 4.13% | 4.30% | −.17% |
| Hispanic | 7.68% | 7.27% | +.41% |
| All Minorities | 18.33% | 18.31% | −.02% |

(*See* Pl.'s Hearing Exs. 8–10.) In light of this statistical evidence, defendant cannot prove that the jury selection procedures used in this case, though based on some erroneous voter-registration data, systematically excluded a distinctive or cognizable group from the selection process. To the contrary, the evidence produced at the hearing indicates that the clerk's errors did not cause any statistically significant impact on the racial composition of the master jury wheel. In effect, the errors resulted in (1) the probable under-representation of African–Americans by one juror in every 558 names on the master jury list and (2) the probable over-representation of Hispanics by one juror in every 244 names on the list. (*See* Pl.'s Resp., Ex. 3 at 2.) Defendant offers no evidence that the jury pool "failed to be reasonably representative" of the community in general. *See Test,* 550 F.2d at 585–87. Defendant, therefore, has failed to establish a violation of the statutory "fair cross section requirement."

■ Defendant also argues, through advisory counsel, that he is entitled to relief because the clerk did not adhere to the statutory "mandate" concerning the use of voter

registration lists. According to defendant, the inadvertent transposition of numbers from the source list (registered voters *plus* licensed drivers) requires a finding that the clerk's mistake constitutes a substantial failure to comply with the Jury Selection Act. Defendant's argument misses. the point. Although the Jury Selection Act requires the use of either voter registration lists or records of actual voters when determining proportional representation in the master jury wheel, the clerk's mistake did not frustrate the underlying purpose of the statute—the random, nondiscriminatory selection of potential jurors from a fair cross section of the relevant community. Furthermore, though the clerk must use county voter registration lists as the basis for determining "proportional representation," the relevant inquiry under section 1863(b)(3) is whether each county is "*substantially proportionally represented*" in the master jury wheel. *See* 28 U.S.C.A. § 1863(b)(3). A comparison of the proportionate shares used by the clerk, which were based on erroneous information, with the actual or "true" percentages based on accurate voter registration numbers reveals only minor deviations from the norm:

DENVER DIVISION

| County | Clerk's VRL | Clerk's % VRL | Actual VRL | Actual % VRL | Variance % VRL |
|--------|-------------|---------------|------------|--------------|----------------|
| Adams | 108,004 | 9.20 | 108,004 | 9.61 | .41 |
| Arapahoe | 194,478 | 16.58 | 194,478 | 17.30 | .72 |
| Boulder | 120,492 | 10.28 | 120,492 | 10.72 | .44 |
| Chaffee | 6,173 | .53 | 6,173 | .55 | .02 |
| Clear Creek | *1,142 | .10 | 4,255 | .38 | .28 |
| Denver | 227,487 | 19.40 | 227,487 | 20.24 | .84 |
| Douglas | 38,784 | 3.31 | 38,784 | 3.45 | .14 |
| Elbert | 5,397 | .47 | 5,397 | .48 | .01 |
| Gilpin | 694 | .06 | 694 | .06 | .00 |
| Grand | 5,491 | .47 | 5,491 | .49 | .02 |
| Jefferson | 224,131 | 19.11 | 224,131 | 19.94 | 83 |
| Lake | 2,840 | .25 | 2,840 | .25 | .00 |
| Larimer | 94,470 | 8.06 | 94,470 | 8.41 | .35 |
| Logan | 8,550 | .73 | 8,550 | .76 | .03 |
| Morgan | 7,061 | .60 | 7,061 | .63 | .03 |
| Park | 4,244 | .37 | 4,244 | .38 | .01 |
| Phillips | 2,447 | .20 | 2,447 | .22 | .02 |
| Sedgwick | **2,395 | .21 | 1,581 | .14 | -.07 |
| Summit | **12,522 | 1.07 | 7,199 | .64 | -.43 |
| Teller | **10,949 | .93 | 6,882 | .61 | -.32 |
| Washington | **4,075 | .34 | 2,771 | .25 | -.09 |
| Weld | **84,990 | 7.24 | 46,526 | 4.14 | -3.10 |
| Yuma | **6,104 | .52 | 3,891 | .35 | -.17 |
| TOTAL | 1,173,020 | 100.03 | 1,123,849 | 100.00 | 8.33 |

(shaded rows are counties where erroneous figures were used)
* nature of error unclear
** erroneously transposed from source list

As indicated by the table, nearly all of the variations are within a few tenths of one percent of the "true" numbers. Specifically, the proportionate shares calculated by the clerk are (1) within .01 percent and .50 percent of the true percentage in 19 of 23 counties and (2) within .51 and .99 percent of the true percentage in 3 of 23 counties in the Denver Division.* The degree of variation between the clerk's calculations and the accurate proportionate shares exceeded one percent in a single instance—Weld County. These variations are statistically insignificant. Although the overall or accumulated deviation was 8.33 percent, defendant has failed to prove that this margin of error will result in "a significant adverse impact on the composition of an average jury." *United States v. Tuttle,* 729 F.2d 1325, 1328 (10th Cir.1984), *cert. denied,* 469 U.S. 1192, 105

* See attached Appendix for tables concerning the impact of the clerk's errors on the Pueblo, Grand

S.Ct. 968, 83 L.Ed.2d 972 (1985). To the contrary, viewing the size of the impact on the individual counties, the evidence demonstrates that each county is substantially proportionally represented in the master jury wheel. Accordingly, weighing the clerk's violation against the statutory goal of random, nondiscriminatory juror selection, I find and conclude that the clerk's errors were technical in nature and did not constitute a substantial failure to comply with the Jury Selection Act.

### 3. *Conclusion*

Based on the foregoing, it is therefore

ORDERED that defendant's motion to dismiss the indictment or for a stay of further proceedings is DENIED.

Junction, and Durango Divisions. (Shaded rows are counties where erroneous figures were used.)

# APPENDIX

GRAND JUNCTION DIVISION

| County | Clerk's VRL | Clerk's % VRL | Actual VRL | Actual % VRL | Variance % VRL |
|---|---|---|---|---|---|
| Delta | 9,865 | 7.96 | 9,865 | 8.24 | .28 |
| Eagle | · 10,153 | 8.19 | 10,153 | 8.48 | .29 |
| Garfield | 12,386 | 9.99 | 12,386 | 10.35 | .36 |
| Gunnison | 5,079 | 4.10 | 5,079 | 4.24 | .14 |
| Hinsdale | 516 | .42 | 516 | .43 | .01 |
| Jackson | 1,011 | .82 | 1,011 | .84 | .02 |
| Mesa | 42,841 | 34.56 | 42,841 | 35.79 | 1.23 |
| Moffat | 5,953 | 4.81 | 5,953 | 4.97 | .16 |
| Montrose | 9,106 | 7.35 | 9,106 | 7.61 | .26 |
| San Miguel | **4,791 | 3.87 | 2,459 | 2.05 | -1.82 |
| Ouray | 1,546 | 1.25 | 1,546 | 1.29 | .04 |
| Pitkin | 7,904 | 6.38 | 7,904 | 6.60 | .22 |
| Rio Blanco | 2,970 | 2.40 | 2,970 | 2.48 | .08 |
| Routt | *9,876 | 7.97 | 7,905 | 6.60 | -1.37 |
| TOTAL | 123,997 | 100.07 | 119,694 | 99.97 | 6.28 |

DURANGO DIVISION

| County | Clerk's VRL | Clerk's % VRL | Actual VRL | Actual % VRL | Variance % VRL |
|---|---|---|---|---|---|
| Archuleta | 2,758 | 11.59 | 2,758 | 11.74 | .15 |
| Dolores | 931 | 3.92 | 931 | 3.96 | .04 |
| La Plata | 11,650 | 48.95 | 11,650 | 49.59 | .64 |
| Montezuma | 7,683 | 32.28 | 7,683 | 32.70 | .42 |
| San Juan | **781 | 3.29 | 473 | 2.01 | -1.28 |
| TOTAL | 23,803 | 100.03 | 23,495 | 99.97 | 2.53 |

\* nature of error unclear
\*\* erroneously transposed from source list

PUEBLO DIVISION

| County | Clerk's VRL | Clerk's % VRL | Actual VRL | Actual % VRL | Variance % VRL |
|---|---|---|---|---|---|
| Alamosa | *5,858 | 2.02 | 4,373 | 1.52 | *.50 |
| Baca | *3,367 | 1.16 | 2,688 | .93 | *.23 |
| Bent | 1,562 | .54 | 1,562 | .54 | .00 |
| Cheyenne | 1,214 | .42 | 1,214 | .42 | .00 |
| Conejos | 3,143 | 1.09 | 3,143 | 1.09 | .00 |
| Costilla | 2,108 | .73 | 2,108 | .73 | .00 |
| Crowley | 1,646 | .57 | 1,646 | .57 | .00 |
| Custer | 1,249 | .43 | 1,249 | .43 | .00 |
| El Paso | 158,419 | 54.47 | 158,419 | 55.16 | .69 |
| Fremont | 16,829 | 5.79 | 16,829 | 5.86 | .07 |
| Huerfano | *4,961 | 1.70 | 3,500 | 1.22 | *.48 |
| Kiowa | 988 | .33 | 988 | .34 | .01 |
| Kit Carson | 4,055 | 1.40 | 4,055 | 1.41 | .01 |
| Las Animas | 7,178 | 2.47 | 7,178 | 2.50 | .03 |
| Lincoln | 2,441 | .83 | 2,441 | .85 | .02 |
| Mineral | 313 | .11 | 313 | .11 | .00 |
| Otero | 8,862 | 3.04 | 8,862 | 3.09 | .05 |
| Prowers | 5,947 | 2.04 | 5,947 | 2.07 | .03 |
| Pueblo | 54,218 | 18.70 | 54,218 | 18.88 | .18 |
| Rio Grande | 4,031 | 1.39 | 4,031 | 1.40 | .01 |
| Saguache | 2,455 | .84 | 2,455 | .85 | .01 |
| TOTAL | 290,844 | 100.07 | 287,211 | 99.97 | 2.32 |

* nature of error unclear